UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Ernestine Wingate as the Personal Representative of the Estate of Ernest Russell, | ) ) ) ) | Civil Action No. 4:13-cv-03343-BHH-KDW |
| Plaintiff, | ) ) ) | REPORT AND RECOMMENDATION |
| vs. | ) ) ) | (Defendants City of Darlington, Darlington Police Department, and Clyde M. Sheppard, ECF No. 63) |
| Wayne Byrd, both individually and in his Official capacity as the Sheriff of Darlington County; Darlington County Sheriff's Office; The County of Darlington; The City of Darlington Police Department; The City of Darlington; Ben Weatherford; Clyde M Shepherd; and John Does 1-10 | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff, as personal representative of the Estate of Ernest Russell ("Russell"), filed this 42 U.S.C. § 1983 action alleging that Defendants violated Russell's Fourth and Fourteenth Amendment rights during the execution of a search warrant that resulted in Russell's death. Plaintiff also brought South Carolina state law claims against Defendants. Presently before the court is Defendant Weatherford's Motion for Summary Judgment filed on January 12, 2016. ECF No. 59. Additionally, Summary Judgment Motions by Defendants City of Darlington, Darlington Police Department, and Clyde M. Sheppard,[1] ECF No. 63, and Defendants Wayne Byrd, Darlington County Sheriff's Office, and the County of Darlington, ECF No. 64, are pending before the court. This Report and Recommendation ("R&R") addresses only Defendants City of Darlington, Darlington Police Department, and Clyde M. Sheppard. ECF No. 63.

---

[1] Though Plaintiff spells Officer Shepherd as indicated in the above caption to this case, it appears that the correct spelling is "Sheppard," and the undersigned will spell his name accordingly herein.

Plaintiff collectively responded to the pending Motions on February 16, 2016. ECF No. 76.[2]

Defendant Weatherford was the only Defendant to submit a Reply on February 25, 2016. ECF

No. 80. All pretrial proceedings in this case were referred to the undersigned pursuant to the

provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (f)

(D.S.C.). Because these Motions are potentially dispositive of Plaintiff's claims, this Report and

Recommendation is entered for review by the district judge.

I.    Background

Plaintiff brought this lawsuit after Russell was shot and killed by Darlington law

enforcement officers during the execution of a search warrant for gambling paraphernalia on

October 21, 2011. ECF No. 1-1. Defendant Sheppard obtained the search warrant on October 19,

2011, and the warrant indicated that officers were in search of the following: "DCDEU monies,

large amounts of U.S. currency, gaming machines, books records, receipts, notes, ledgers,

electronic devices and other papers relating to illegal gaming and gaming equipment." ECF No.

60-1 at 3. The warrant indicated that officers intended to search a white building on 1312 S.

Main Street in Darlington, SC. *Id.* at 3. In the "reason for affiant's belief that the property sought

is on the subject premises," Defendant Sheppard indicated the following:

> Agents of the Darlington County Drug Unit has (sic) been conducting an
> investigation on a gambling house located at 1312 S. Main Street in the City of
> Darlington. Several complaints have been received about this location due to
> illegal gambling. With the use of a confidential informant agents were able to
> observe through audio and video recording illegal betting and gambleing (sic) on
> sports games.

---

[2] On August 19, 2016, the undersigned approved a settlement agreement between Plaintiff and
former Defendants Robert McIntyre and John Specht. *See* ECF No. 114. The undersigned's
approval of the settlement agreement makes these former Defendants' Summary Judgment
Motion, ECF No. 65, moot. Plaintiff's Response addresses arguments made in ECF No. 65, and
these former Defendants will be mentioned throughout this R&R because of their involvement in
the execution of the search warrant that led to the filing of this action.

*Id.*

The execution of the warrant was recorded by a chest camera ("chest-cam") worn by Officer Specht. The parties have submitted video footage from this chest-cam in support of their arguments. The undersigned has reviewed this video evidence, and, based on that review, the following is a description of what can be seen during the execution of the search warrant for the property located at 1312 South Main Street, Darlington, South Carolina on October 21, 2011,[3] ECF Nos. 67, 76-18:

During daylight hours, officers exited a vehicle and approached the side of a white building with two doors. The first door (the right-side door) had a glass or plastic storm door covering a wooden door. Officers opened the first door, and one officer (now known to be Defendant Weatherford) attempted to twist the inside wooden door's knob but finds it is locked. This officer then walks toward the other side door (the left-side door). At this point in the video, Officer Specht is behind two officers, and the first in line is wearing a vest with "SHERIFF" written across the back. One officer, the second officer (now known to be Officer McIntye), hits the locked wooden door with a battering ram, but the door does not open. This officer has "POLICE" written across the back of his vest. The second officer runs to the left-side door where the first officer is approaching. Based on the count-down clock on the video, this initial entry— the time officers exited the police vehicle to the time the first and second officers entered the left-side door—took approximately 20 seconds.

The first officer (Defendant Weatherford) enters, without knocking, through the left-side door. The video does not depict images from inside the house in the moments immediately

---

[3] Though the execution of the search warrant occurred on October 21, 2011, the bottom right-hand frame of the video incorrectly indicates that the warrant was executed on March 18, 2007 at 21:29 hours.

following the first officer's entry. Next, the two officers (Officers McIntyre and Specht) following the first officer also enter the location through this door. Loud shouting is heard as the second officer enters into the location, and the third officer is immediately behind him. The video depicts a woman (the confidential informant) standing towards the front of the room, and the officers pass her during their entry. More yelling is heard, and several shots are fired. It is unclear from the video who fired the shots or the circumstances leading to the firing of the shots. One officer, with "SHERIFF" written on the front and back of his vest,[4] looked at the camera and said, "he pointed a gun at me." Based on the countdown clock on the video, 46 seconds elapsed between time of both officers' entry until the declaration by the officer (Defendant Weatherford).

After the shooting, the officers re-enter the location, and one officer says, "where's the gun now?" Russell is seen sitting or slumped behind a counter, and there is black gun lying on the counter to the left of where Russell's body is resting. One of the officers then goes outside and re-enters with a camera. Officer Specht then surveys the room and takes several photographs. Five video poker machines are seen lining one of the walls of the room.

In this action, Plaintiff maintains that the officers' search was objectively unreasonable because officers failed to knock and announce their presence prior to their entry into the premises. ECF No. 1-1 at 9-11. Specifically, in the Complaint, Plaintiff alleges that four officers—Defendants Weatherford, McIntyre, Sheppard, and Specht—"arrived at the premises and without warning or notice made a brief attempt to break down the rear door of the premises with a battering ram." *Id.* at 9; ¶ 19. Additionally, Plaintiff alleges that "[a]pproximately one

---

[4] The "SHERIFF" insignia on the front of the vest is in "1-2" letters on the right upper portion of the vest. The "SHERIFF" insignia on the back of the vest is in much larger letters across the back of the vest.

'strike' or 'blow to the rear door was made when Defendants Weatherford and [Officer] McIntyre ran to the front door, pulled it open and ran through the front door wearing blue jeans, white t-shirts and brown 'bullet-proof' vests." *Id.* ¶ 20. Plaintiff represents that Defendant Weatherford ran through the front entry of the premises with his gun drawn and without knocking and that Officer McIntyre ran through the front entry immediately behind Defendant Weatherford. *Id.* ¶ 21-23. Moreover, Plaintiff alleges: "In less than five and a half (5.5) seconds from the time Defendant Weatherford came running in through the front door unannounced and wearing 'street clothes', Defendants Weatherford and McIntyre fired approximately nine (9) 'point blank' shots at Ernest Russell hitting striking him in the face, neck, and torso and killing him." *Id.* ¶ 24.

Based on the execution of the warrant, Plaintiff maintains that Defendants' failure to knock and announce did not "give the Decedent Ernest Russell a reasonable amount of time to come to the door and comply with a law enforcement request." *Id.* ¶ 28. Additionally, Plaintiff maintains that the officers' use of force was objectively unreasonable. *Id.* ¶ 29. Further, Plaintiff maintains that "[Officer] Specht and [Defendant] Sheppard were integral and active participants in this improper search and seizure [and] both were aware of this improper search and subsequent seizure, they had the ability to stop it and they both failed to do so." *Id.* ¶¶ 30-31.

Plaintiff represents that Defendant Weatherford gave the following sworn and typed statement to SLED:

> I then headed to the front door. I opened the screen door and checked the other door. It was open. As I opened the door I yelled "Sheriff's office search warrant." As I entered, I pulled out my weapon I yelled again "Sheriff's office" I looked at the CI walking away from the counter to my right. The CI had her hands in the air saying something but I don't remember what. I told her to get her hands up and then I went on past her. I then saw a subject bending over behind the counter. I yelled several times "let me see your hands, Sheriff's office, search warrant". I continued to yell "let me see your hands", but he would not show me his hands.

> He then looked up at me. I looked him in the eye and yelled "Sheriff's office put your hands up." That's when I saw a gun in his right hand. It was a silver/rusty color revolver. He then laid the revolver down on the counter and looked at me but never took his hand off of it. I started yelling "put the gun down sheriff's office". He then picked it up and he was leaning on his right elbow with the gun pointing towards me. I yelled several more times, "drop the gun, drop the gun." He then looked right at me and raised the gun towards me. I could see down the barrel I could see every hole in the cylinder. Feeling that my life was in jeopardy, that is when I shot.

*Id.* ¶ 38. Plaintiff alleges Defendant Weatherford's statement was false and was made in an attempt to cover up the unlawful killing. *Id.* ¶ 39. Plaintiff alleges that Defendant McIntyre also gave a similar false statement in an attempt to cover up the unlawful killing. *Id.* ¶ 40. Plaintiff maintains that Judith Kate Green [the confidential informant or "CI"] made a false statement, claiming that Russell fired three times at officers, in an attempt to conspire with and cover up the unlawful shooting of Russell. *Id.* ¶¶ 41-42.

In her first cause of action, Plaintiff brings a § 1983 claim for unlawful search, excessive force, and a violation of due process under 42 U.S.C. § 1983. *Id.* ¶ 46. Plaintiff brings this cause of action against all Defendants and frames it as violations of the Fourth and Fourteenth Amendments. *See id.* Specifically, Plaintiff maintains that Defendants, through their acts and omissions, deprived Russell of the following constitutional rights:

a. The right to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments;
b. The right to be free from excessive and unreasonable force in the course of search or seizure as secured by the Fourth and Fourteenth Amendments;
c. The right to be free from the use of unlawful deadly force as secured by the Fourth and Fourteenth Amendments;
d. The right to be free of unlawful, reckless, deliberately indifferent, and conscience shocking deadly and/or excessive force as secured by the Fourteenth Amendment;
e. The right to be free from deprivation of liberty and injury without substantive due process and from state created danger as secured by the Fourteenth Amendment;
f. And in such other particulars as may be learned through discovery.

*Id.* ¶¶ 46-47.

In her second cause of action, Plaintiff brings a § 1983 claim for deliberate indifference against Defendants Byrd, Darlington County Sheriff's Office, and Darlington County. *Id.* ¶¶ 56-57. Specifically, Plaintiff alleges that these Defendants, through their acts and omissions, allowed officers, "pursuant to the following customs, policies, practices, and/or procedures of the Darlington County Sheriff's Office. . . :"

    a. To use or tolerate the use of excessive and/or unjustified force, in particular during the search of residential dwellings;

    b. To create unnecessary danger and risk of serious harm or death, with deliberate indifference, to occupants of residences being searched by law enforcement officers;

    c. To cover-up violations of constitutional rights by failing to properly investigate and/or evaluate officer involved shootings and by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity;[5]

    d. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and,

    e. To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct, and;

    f. And as may otherwise be learned during discovery in this case.

*Id.* ¶ 57. Further Plaintiff alleges these Defendants "failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline their officers with deliberate indifference to Plaintiffs' constitutional rights. . . ." *Id.* ¶ 58. Plaintiff also maintains that the Defendant officers' "unconstitutional actions and/or omissions . . . were approved, tolerated and/or ratified by policymaking officials for the Darlington county Sheriff's office and Darlington County." *Id.* ¶ 59.

In the fourth cause of action, Plaintiff brings a final § 1983 cause of action for conspiracy as to all state actors. *Id.* ¶¶ 67-68. Additionally, under the fourth cause of action, Plaintiff brings a civil conspiracy cause of action against the non-state actors. *See id.* There, Plaintiff maintains

---

[5] Sub-paragraph "c" in the Complaint is incorrectly labeled subparagraph "d" and the remaining sub-paragraphs are mislabeled.

that Defendants "conspired and entered into express and/or implied agreements, understandings or meetings of the minds among themselves to deprive Plaintiff and Plaintiff's decedent of their rights as well as their Constitutional rights by giving clearly false statements to SLED during their official investigation." *Id.* ¶ 68.

Plaintiff's third, fifth, and sixth causes of action are brought under South Carolina state law. In her third cause of action, Plaintiff brings negligence and gross negligence claims against Defendants Byrd, Darlington County Sheriff's Office, Darlington County, Darlington City Police, and the City of Darlington. *Id.* ¶¶ 64-66. Plaintiff's fifth cause of action is for wrongful death, and Plaintiff's sixth cause of action is a "survivorship action." *Id.* ¶¶ 73-78.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary

judgment motion. *Anderson*, 477 U.S. at 251.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

II.     Analysis

A.     Bystander Liability

Defendants contend that the alleged actions/inactions claimed by Plaintiff do not rise to the level of a constitutional violation and the Decedent did not suffer any infringement of constitutional and/or federal rights, privileges or immunities or violations of state law. ECF No. 63-1 at 4. These Defendants argue that because Defendant Sheppard was not part of the team that entered the building during the execution of the search warrant, that "Plaintiff has not demonstrated how any alleged actions of Sheppard violated Decedent's constitutional rights and caused him injury. *Id.* Further, Defendants argue that Plaintiff cannot prove bystander liability because she is unable to demonstrate that Officer Sheppard: "(1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act." *Id.* at 5. Further Defendants argue that the Fourth Circuit has not adopted the integral participant theory. *Id.* Essentially, these Defendants maintain that Plaintiff has presented no evidence that Defendant Sheppard caused Russell injury. *Id.*

In Response, Plaintiff maintains that Defendant Sheppard is responsible for the violations of Russell's constitutional rights based on bystander liability. ECF No. 76 at 32. Plaintiff argues that individuals can be subject to liability based on their actions or omissions under the theory of bystander liability. *Id.* at 33. The majority of Plaintiff's argument to the court focuses on Officer

Specht's participation in the execution of the search warrant. *Id.* at 34-35. However, Officer Specht has been dismissed as a party to this action.

In *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 203 (4th Cir. 2002), the Fourth Circuit recognized that several circuits "have adopted a framework for assessing the applicability of bystander liability for law officers." *Citing Skrtich v. Thornton,* 280 F.3d 1295, 1301 (11th Cir. 2002); *Mick v. Brewer,* 76 F.3d 1127, 1136 (10th Cir. 1996); *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994); *Bruner v. Dunaway,* 684 F.2d 422, 425–26 (6th Cir. 1982); *Putman v. Gerloff,* 639 F.2d 415, 423 (8th Cir. 1981); *Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir. 1972). There, the court noted:

> As a general proposition, these courts have concluded that an officer possesses "an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers." According to the Second Circuit, such a duty attaches when an officer observes or has reason to know that a "constitutional violation [is being] committed" by other officers and possesses "a realistic opportunity to intervene to prevent the harm from occurring."

*Randall*, 302 F.3d at 203-04 (citing *Anderson,* 17 F.3d at 557). Courts that have adopted bystander liability use the following three-part test for determining that an officer may be liable under § 1983 if the officer:    "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 204.

The undersigned finds that Defendant Clyde Sheppard should not be liable in this action under a theory of bystander liability. Undisputed evidence indicates that his primary role in this investigation was procuring the search warrant. Defendant Sheppard was the affiant to the search warrant and appears to have participated in the investigation leading up to the warrant's procurement. *See* ECF No. 60-1 at 3. The warrant does not indicate that it is a "no knock" warrant which would have given the officers permission to enter the premises without knocking

and announcing their presence. Moreover, the undisputed video footage obtained from Defendant Specht's chest-cam indicates that Defendant Weatherford, Officer McIntyre, and Officer Specht participated in executing the search warrant, while Defendant Sheppard was not present. Specifically, as these Defendants indicate, Defendant "Sheppard was not part of the team who entered the building as he was detaining a vehicle." ECF No. 63-1 at 4.

Moreover, at this stage, Plaintiff does not appear to argue that Defendant Sheppard had any involvement that injured Russell. *See* ECF No. 76 at 34-35. Rather, nearly all of Plaintiff's argument focuses on Officer Specht's actions or omissions. *See id.* Plaintiff briefly mentions Defendant Sheppard in a footnote and states:

> The same is true for Plaintiff's bystander claim against Officer Sheppard. As this Court found in <u>Norman</u>, bystander liability may apply to an officer "intimately involved in the operation." 2011 WL 4008134 at *7. Officer Sheppard was in command and all officers agreed that this was his operation. B. Weatherford Dep. 19:11-15; C. Sheppard Dep. 43:1-2. Like in <u>Norman</u>, bystander liability applies to Officer Sheppard because he was a "central participant[] in the operation." 2011 WL 4008134 at *7.

*Id.* at 35 n. 9.

In the *Norman* case, plaintiff Rahmad Norman brought a § 1983 case alleging, among other things, that defendants used excessive force against him in violation of his constitutional rights. 2011 WL 4008134 at *1-2. Norman also alleged that defendants Frederick and Hamlett failed to protect him from abuse of other defendants under the theory of bystander liability. *Id.* at *7. There, the district court found there were genuine issues of material fact concerning the defendants' "presence and participation at the scene of the stop and arrest. . ." *Id.* In determining there was a question of fact, the court found: "The remaining question is whether Defendants *knew* that their fellow officers were violating Plaintiff's constitutional rights." *Id.* (emphasis

added). Additionally, the district court relied on the following evidence that indicated both named defendants could have been present at the scene:

> Although Plaintiff states that he is not completely certain who removed him from the vehicle, he testified during his deposition that it "[s]ounded like Mike Frederick." Plaintiff also testified that co-defendant Hamlett handcuffed him and that while on the ground, face down, and in handcuffs he felt "more than one knee" on his back. Plaintiff also testified during his deposition that Defendant Frederick hit him in the mouth with the barrel of his gun.

*Id.*

The undersigned finds the *Norman* case does not support Plaintiff's assertion that because Defendant Sheppard was intimately involved in the operation, he could be liable under the theory of bystander liability. As the *Norman* court mandates, the central question here is whether there is any evidence that Defendant Sheppard knew that fellow officers were violating Russell's constitutional rights. The undersigned finds the record before the court is devoid of any evidence indicating Defendant Sheppard possessed such knowledge.

Accordingly, the undersigned recommends granting these Defendants' Motion for Summary Judgment because Plaintiff has failed to allege or offer any evidence indicating that Defendant Sheppard could be liable for possible violations of Russell's constitutional rights based on bystander liability.

B. Vicarious Liability, Respondeat Superior, and Supervisory Liability Claims

Defendants maintain the doctrines of vicarious liability and respondeat superior are not applicable in §1983 actions. ECF No. 63-1 at 6. To be liable under a theory of supervisory liability, Defendants maintain Plaintiff must present evidence to show specific wrongdoing on the part of a named Defendant, that Defendant may not be held liable for the acts of others. *Id.* Further, Defendants argue Plaintiff presents no evidence that Defendant Sheppard had any supervisory responsibilities, and the evidence demonstrates that Sheppard was a member of this

team with no such responsibility. *Id.* Moreover, Defendants maintain that Plaintiff fails to show that any Defendant is liable under any supervisory capacity for the actions of any employees. *Id.* Finally, Defendants argue that Plaintiff fails to address any of the supervisory liability elements required for supervisory capacity as to the City of Darlington or the City of Darlington Police Department or establish that Sheppard had any authority to direct the actions other unit members. *Id.* at 6-7.

Plaintiff maintains that Defendants' argument should be rejected because "personal involvement is not required to hold a supervisory state actor liable for a subordinate's constitutional violation." ECF No. 76 at 43. Further, Plaintiff argues that she has "produced evidence [that Defendant] Weatherford was not properly trained to perform operations like the one resulting in Mr. Russell's death and was not properly supervised in its execution." *Id.* Plaintiff maintains that "Officers Weatherford, McIntyre, and Specht were not performing basic police work when they planned and carried out the execution of a search warrant at Mr. Russell's premises." *Id.* at 46. Further, Plaintiff argues that "[b]y placing unqualified officers in a position to recklessly break in to Mr. Russell's premises, these defendants were a direct and proximate cause of Mr. Russell's death and may be held liable for Plaintiff's damages." *Id.* Plaintiff does not address whether these Defendants should be denied summary judgment on her common law cause of action for supervisory liability.

In her Complaint, Plaintiff does not bring a § 1983 cause of action for supervisory liability against these Defendants. ECF No. 1-1 at 16-18. Rather, Plaintiff couches a supervisory-like claim against Darlington City Police and the City of Darlington in her third cause of action for negligence and gross negligence under South Carolina common law. *See id.* at 18. Plaintiff does not bring any supervisory liability claim against Defendant Sheppard. Therefore, because

Plaintiff has not alleged a § 1983 cause of action against Defendants Darlington City Police and the City of Darlington, the undersigned will address this argument in terms of South Carolina common law.

In her Complaint, Plaintiff specifically alleges that certain Defendants, including the Darlington City Police and the City of Darlington, "departed from the duties of care required by law enforcement officers and the agencies that hire, train and employ these officers and were thereby negligent, careless, grossly negligent, reckless and acted in violation of the duties owed to Ernest Russell in that they committed one or more of the following acts of omissions or commission, any or all of which were departures from the prevailing duties of care:

a. in failing to ensure the safety of the Decedent;
b. in failing to appreciate the conditions that existed on the night in question when using force such force and otherwise discharging deadly weapons without just cause;
c. in failing to adhere to proper law enforcement procedures when serving search warrants;
d. in failing to use alternative less violent and/or lethal methods of executing a warrant;
e. in failing to have in place proper and adequate policies, procedures and protocols for law enforcement officers serving warrants or, if such policies, procedures and protocols were in place, in failing to use due care to enforce them;
f. in failing to properly have in place and adequate policies, procedures and protocols for serving warrants and/or using deadly force or, if such policies, procedures and protocols were in place, in failing to use due care to enforce them;
g. in failing to properly train and educate their employees or, if properly trained and educated, in failing to allow their employees to exercise independent judgment and care;
h. in such other particulars as may be ascertained through discovery procedures undertaken pursuant to South Carolina Rules of Civil Procedure.

*Id.* ¶ 65.

In South Carolina, an employer can be independently liable in tort for situations in which "an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public." *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 330 (S.C. 2008)

(citing Restatement (Second) of Torts § 317 (1965)). "[A] plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public." *Id.* This theory rests on the employee's direct negligence. *See id.* In adopting the Second Restatement, the South Carolina Supreme Court has found that the following four-part test is used when determining whether an employer may be liable for negligent supervision if an employee intentionally harms another:

> (i) [the employee] is upon the premises in possession of the [employer] or upon which the [employee] is privileged to enter only as his [employee], or
> (ii) [the employee] is using a chattel of [the employer], and . . . .
> (i)  [the employer] knows or has reason to know that he has the ability to control his [employee], and
> (ii) [the employer] knows or should know of the necessity and opportunity for exercising such control.

*Degenhart v. Knights of Columbus*, 420 S.E.2d 495, 496 (S.C. 1992).

Negligent training and negligent supervision are not separate torts in South Carolina. *Gainey v. Kingston Plantation*, No. 4:06-3373-RBH, 2008 WL 706916, at *7 n.4 (D.S.C. Mar. 14, 2008) ("It does not appear that South Carolina recognizes a claim for negligent training separate and apart from one for negligent supervision."). In other words, a plaintiff must use the same test, as cited above, to demonstrate a cause of action for either negligent supervision or negligent training. *See James*, 661 S.E.2d at 330 (2008) ("Just as an employee can act to cause another's injury in a tortious manner, so can an employer be independently liable in tort. In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself *negligent in hiring, supervising, or training the employee*, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the

public.") (emphasis added). Therefore, the undersigned must determine whether a genuine issue of material fact exists to give Darlington Police Department and the City of Darlington reason and opportunity to control Defendant Sheppard or another officer.

Here, Plaintiff does not present any evidence concerning specific knowledge of these Defendants. Moreover, the allegations in Plaintiff's Complaint concerning policies, procedures, and protocols are not enough to withstand summary judgment on Plaintiff's common law negligent supervision cause of action. The same is true for Plaintiff's allegations of negligent training. No evidence demonstrates that these Defendants were put on notice that one of the officers participating in this investigation or warrant execution created an undue risk of harm to the public. Such evidence would include but is not limited to an officers' criminal history, work history, or other possible ill behaviors or attributes.

When addressing a negligent supervision cause of action, no South Carolina court has held that evidence of poor policies and protocol are enough to demonstrate negligent supervision. Similarly, a demonstration of a lack of a particular training opportunity has not been deemed evidence that would support a claim of negligent training. *See Gilco v. Logan Cnty. Com'n*, No. 2:11-0032, 2012 WL 3580056, at *7 (S.D.W. Va. Aug. 17, 2012) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)) ("[T]he Supreme Court has counseled that the fact that 'a particular [employee] may be unsatisfactorily trained will not alone suffice to fasten liability on the [government entity].'"). Rather, courts have examined specific evidence regarding an employee's history, behaviors, or pattern of behavior when examining causes of action for negligent supervision or negligent training. *See e.g., Doe v. Bishop of Charleston*, 754 S.E.2d 494, 500 (S.C. 2014), *reh'g denied* (Mar. 6, 2014) ("This rule has been applied to find an employer liable for negligent supervision when the employee sexually assaulted a minor and the

employer had some notice of the employee's prior inappropriate sexual behavior with another minor."); *Bank of New York v. Sumter Cnty.*, 691 S.E.2d 473, 478 (S.C. 2010) (affirming summary judgment where there was no evidence that the South Carolina Judicial Department knew or should have known employees posed an "undue risk of harm to the public"); *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292 (S.C. 1996) (holding life insurer could be held liable for negligent supervision of agent whom it knew had mishandled applications in past); *Hamilton v. Charleston Cnty. Sheriff's Dep't*, 731 S.E.2d 727, 730 (S.C. Ct. App. 2012) ("Although [an expert] testified the Department violated nationally accepted standards, the Department provided uncontradicted evidence that it met minimum security standards set for South Carolina. In addition, there is no evidence the Department knew or should have known of the necessity to exercise additional supervision of Officer [employee] to prevent him from harming Hamilton."); *Kase v. Ebert*, 707 S.E.2d 456, 459 (S.C. Ct. App. 2011) (holding that evidence of employee's single assault conviction was reason for employer to foresee that employing employee would create an undue risk of harm to the public in negligent hiring case); *Kase*, 707 S.E.2d at 459 (examining employee's poor driving record, insubordinate behavior, marital difficulties and resulting financial problems, and prior erratic behavior before holding that employer was not liable under negligent supervision and retention causes of action); *Doe v. ATC, Inc.*, 624 S.E.2d 447, 451 (S.C. Ct. App. 2005) (examining allegations of employee's previous misconduct of an "inappropriate advance" directed toward a co-worker in a negligent retention case and holding that a single isolated incident of prior misconduct by an employee (of which the employer knew or should have known) may support a negligent retention claim, provided the prior misconduct has a sufficient nexus to the ultimate harm); *Charleston, S.C. Registry for Golf & Tourism, Inc. v. Young Clement Rivers & Tisdale, LLP*, 598 S.E.2d 717, 723 (S.C. Ct. App. 2004) (affirming

summary dismissal of negligent supervision claim where "the elements necessary to prove negligent supervision of an employee acting outside of the scope of his employment [were] not present in the record" and specifically finding that employee's performance reviews contained in the record did not support cause of action for negligent supervision); *Moore by Moore v. Berkeley Cnty. Sch. Dist.*, 486 S.E.2d 9, 13 (S.C. Ct. App. 1997) ("Absent some evidence indicating notice to the District of [employee's] inappropriate sexual proclivities, there is no basis to conclude the District knew or should have known of the necessity for supervising her conduct outside the classroom."); *Doe by Doe v. Greenville Hosp. Sys.*, 448 S.E.2d 564 (S.C. Ct. App. 1994) (holding hospital had prior notice of inappropriate sexual behavior on part of male employee so as to be liable for negligent hiring and supervision); *see also James*, 661 S.E.2d at 331 (acknowledging that often pieces of evidence "such as a prior driving record, an arrest record, or other records of past mishaps or misbehavior by the employee" are offered to prove a negligent hiring, training, supervision, or entrustment claim).

Some evidence relating specifically to the employee—such as the employee's history, traits, and past behaviors—that could put the employer on notice that the employer has reason to control or train its employee must be present in a case concerning an employer's direct negligence. Here, no such evidence has been produced. Therefore, the undersigned recommends granting these Defendants' Motion for Summary Judgment on Plaintiff's purported causes of action for negligent supervision and negligent training.

C.    Eleventh Amendment Immunity

Defendants argue they are entitled to Eleventh Amendment Immunity. ECF No. 63-1 at 7. Specifically, Defendants maintain that a party "sued in his or her official capacity is construed as and is equivalent to a suit against the state, the real party in interest." *Id.* Therefore, these

Defendants contend that "South Carolina's Eleventh Amendment immunity attaches in the instant case and the present action is beyond the jurisdiction of the Federal Court." *Id.* Plaintiff does not address Defendants' Eleventh Amendment Immunity argument. *See* ECF No. 76.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendant Sheppard and these other Defendants were agents or employees of the State of South Carolina when acting in their official capacity, they are not a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, these Defendants, in their official capacities, are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends granting these Defendants summary judgment and dismissing Plaintiff's claims against these Defendants brought in their official capacities.

D.     Qualified Immunity

Defendants maintain that they are entitled to qualified immunity from suit in their individual capacities. ECF No. 63-1 at 8. Specifically, these Defendants maintain "they had no reason to know that any of their actions violated the Decedent's constitutional rights [because] [t]he Unit was present on the premises pursuant to a valid search warrant." *Id.* Furthermore, Defendants argue "[t]he doctrine of qualified immunity is clearly applicable as Sheppard's actions were within his official and professional duties, which he executed reasonably, properly, and in good faith." *Id.* Plaintiff's Response argument focuses entirely on Constitutional rights violations. *See* ECF No. 76 at 37-43. Specifically, Plaintiff argues:  "In sum, Defendants are not entitled to summary judgment on their qualified immunity defense because they committed multiple violations of Mr. Russell's Fourth Amendment rights in violation of clearly established law." *Id.* at 43

The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. 457 U.S. 800 (1982). That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818. When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009).  The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case.  *Id.* at 236.  In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the

case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

At the first step of the qualified immunity inquiry, the court must determine whether, viewing the facts in the light most favorable to Russell, Defendants' conduct violated a constitutional right. *See Parrish*, 372 F.3d at 301. Here, the undersigned has specifically found that the facts alleged and taken in the light most favorable to Russell show that none of these Defendants' conduct could have violated Russell's Fourth and Eighth Amendment rights. Accordingly, the undersigned recommends granting these Defendants qualified immunity on the alleged constitutional violations.

E.    Defenses under the South Carolina Tort Claims Act (SCTCA)

These Defendants argue they are immune from suit under certain portions of the SCTCA. ECF No. 63-1 at 9. Specifically, these Defendants cite to the following portions of the SCTCA for the claimed immunity: section 15-78-60(5); section 15-78-60(25); section 15-78-70(c); section 15-78-120(b). *Id.* Plaintiff does not address this specific argument.

Section 15–78–70(a) provides that "[t]his chapter constitutes the exclusive remedy for any tort committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in subsection (b)." The SCTCA grants to the State, its political subdivisions, and employees, while acting within the scope of official duty, immunity from liability for any tort, except as waived therein. S.C. Code Ann. § 15–78–20(b). Subsection 60 of the SCTCA provides immunity to governmental entities for a number of actions. Section 15-78-

21

60(5) indicates that a governmental entity is not liable for loss resulting from "the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee." Section 15-78-60(25) provides a governmental entity with immunity for loss resulting from "responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner."

Section 15-78-70 (c) provides:  "a person, when bringing an action against a governmental entity under the provisions of this chapter, shall name as a party defendant only the agency or political subdivision for which the employee was acting and is not required to name the employee individually, unless the agency or political subdivision for which the employee was acting cannot be determined at the time the action is instituted." Additionally, section 15-78-120 (b) provides that there shall be "[n]o award for damages under this chapter shall include punitive or exemplary damages or interest prior to judgment."

The undersigned finds these Defendants are immune from suit based on the language in section 15-78-60(5). Therefore, the undersigned recommends granting these Defendants Summary Judgment on Plaintiff's South Carolina state law causes of action.

F.      Defendants are not "Persons" subject to suit under 42 U.S.C. § 1983

These Defendants argue that "Plaintiff's claims against [them], brought against them in their official capacities, are barred by the principle enunciated in *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) that neither a state agency not its officials acting in their official capacities are 'persons' amenable to suit under § 1983. ECF No. 63-1 at 10 (also citing *Monell v.*

*New York City Dep't of Social Services*, 436 U.S. 658 (1978)). Based on the undersigned previous recommendations that these Defendants are entitled to qualified immunity on Plaintiff's causes of action brought under § 1983, this argument is moot, and it is unnecessary to address herein.

G.     Remaining State Claims

Finally, these Defendants maintain they are entitled to summary judgment on any claims of the Plaintiff construed as state claims. ECF No. 63-1 at 10. Alternatively, these Defendants maintain "the court should not exercise pendant jurisdiction over any such claims." *Id.* Based on the undersigned's recommendation in section E above finding Defendants are entitled to immunity, it is unnecessary to make a recommendation on the merits of this argument.

III.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants City of Darlington, Darlington Police Department, and Clyde M. Sheppard's Motion for Summary Judgment, ECF No. 63, be *granted* and these Defendants be dismissed as parties to this action.

IT IS SO RECOMMENDED.

August 19, 2016                                      Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).